Dabby, J.
The defendant was indicted for violation of Section 13062, General Code.
A demurrer to the indictment was filed, “for the reason that the same fails to charge an offense against any valid law of the state of Ohio.”
Section 13062, General Code, provides as follows:
“Whoever keeps a room or building, or portion thereof, or occupies public or private grounds with apparatus, books or other device for recording wagers, or selling pools, or records wagers or sells pools upon the result of a trial or contest of skill, speed or power of endurance of man or beast, or, being the owner, lessee or occupant of such room, building or portion thereof, knowingly permits it to be so used or occupied, or keeps, exhibits or employs therein a device or apparatus for recording such wagers, or for selling such pools, or becomes the custodian or depositary for hire or reward of money, property or other thing of value so staked, wagered or pledged, shall be fined * * etc.
The indictment charges that-the defendant—
“ * * * then and there being the owner, lessee or occupant of a certain building, did knowingly, purposely and unlawfully permit it to be used for recording wagers and bets upon the result of trials or contests of skill, speed or power of endurance of beasts, to-wit, horses * * *.”
The contention of counsel for the defendant is that under and by virtue of the act known as “The Horse Racing Act”, Section 1079-1 to 1079-16, General Code, (115 O. L., 367), that Section 13062 is repealed.
Section 1079-13, General Code, which is a part of the Horse Racing Act, provides:
“All laws or parts of laws in conflict with the provisions of this act are hereby repealed insofar as they conflict with any provisions of this act and no laws or parts of laws inconsistent with the provisions of this act shall apply to pari-mutuel or certificate wagering in the manner and form as provided for by this act at any'horse racing meeting held or conducted' by any person, association, trust or corporation having a permit for the holding or conducting of such racing meetings as provided for in this act.”
*270 A study of the act in question will reveal the purpose on the part of the legislature to provide that certain horse racing meetings, with certain methods of wagering or pooling, are legalized, provided that they are conducted when and as permitted under the act, and not otherwise.
The so-called pari-mutuel or certificate system of wagering on horse races is a method of pooling wagers to be participated in by those who are on the successful side.
The law specifically provides in Section 1079-8:
“ * * * (Such pari-mutuel or certificate method of wagering upon horse races held at or within such race track, and at the time of such horse racing meeting shall not be held or construed to be unlawful, other statutes of the state of Ohio to the contrary notwithstanding.)”
The law provides that permits may be granted to persons to conduct horse racing meetings at certain places and certain hours, all of which shall be specifically designated in a permit to be issued to the person conducting the horse racing meeting, and the law provides that:
“ * * * No other place except that provided and designated by the permit-holder, nor any other method or system of betting or wagering except the pari-mutuel or certificate system shall be used or permitted by the permit-holder; nor shall the pari-mutuel or certificate system of wagering be conducted by the permit-holder on any races except the races at the race trapk grounds or enclosure for which the person, association,’ trust or corporation holds a permit.”
There are other provisions not necessary to be set out in detail at this time, except to call attention to the fact that the permit-holder is required to pay to the state racing commission as a tax, certain percentages upon the income, and representatives of the commission are required to be appointed to inspect the books and papers of the permit-holder to see that the state gets as revenue, all to which it is entitled under the law.
This law was passed as an emergency law. The second reason for the emergency or necessity is given as—
“2. The state of Ohio is urgently in need of the revenue this bill will produce.”
The entire act, as indicated by its title and all of its provisions, is intended to regulate this form of pari-mutuel *271 wagering for the purpose of making gain to the state. The last paragraph of the first section provides:
“Nothing herein however, shall be construed to permit the pari-mutuel or certificate method of wagering upon any race track unless a permit be secured as provided.”
Gambling on horse racing, if conducted on tracks other than those in which these permits are granted, is not affected by this act. Neither does this act relate to or have any bearing whatever upon horse racing outside Ohio.
Neither does it apply to pools, or betting, or registering of bets at a place other than the meeting places for which permits have been granted. There is no provision for revenue to the state from any place where wagers may be recorded or pools sold in what might for convenience be called a gambling house separate from the meeting place described in such permit.
The court is of the opinion, therefore, that under the restrictive terms of Section 1079-13, relating to repeal of conflicting provisions, that it was not the intention of the legislature to repeal Section 13062, nor did it do so.
Public policy within constitutional limitations is within the legislative grant to the General Assembly. Since the legislature has the power to regulate gambling, it would have the power to say that one form of gambling shall be a misdemeanor, while another form of gambling shall not be punished. This court has no power to do other than interpret the meaning of the new act as it may relate to Section 13062. Why the legislature should say that parimutuel wagering is permissible, while other forms of wagering are not, is not a concern of the court. Why it should say that certain pools under the pari-mutuel form are permissible while certain other forms are not permissible, is for its discretion. The court has nothing to do with the correctness of the policy adopted by the legislature, so long as the legislature operates within constitutional bounds.
The court is of the opinion that the legislature neither intended to, nor did repeal Section 13062.
The court is of the opinion that by this Horse Racing Act the legislature at most made an exception to Section 13062, General Code.
*272 It is clear that if a prosecution were conducted under Section 13062, and it should appear that the transaction involved was within the provisions of the new law, the prosecution must fail.
Under Section 13437-9, General Code, it is not necessary to allege that the transactions involved in this case were excepted by Section 13 of the Horse Racing Act.
That section provides:
“No indictment or information for any offense created or defined by statute shall be deemed objectionable for the reason that it fails to negative any exception, excuse or proviso contained in the statute creating or defining the offense. The fact that the charge is made shall be considered as an allegation that no legal excuse for the doing of the act exists in the particular case.”
The demurrer will therefore be overruled.